UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHELE VERTERAMO,

    Plaintiff,

v.

LOUIS DEJOY, Postmaster General,

    Defendant.

Civil Action No. No. 22-960 (JXN) (SDA)

**OPINION**

**NEALS**, District Judge:

This matter comes before the Court upon the motion for summary judgment filed by Defendant Louis DeJoy, Postmaster General of the United States Postal Service ("Defendant") (ECF No. 34), and the cross-motion for summary judgment of *pro se* Plaintiff Michele Verteramo ("Plaintiff") (ECF No. 37), filed pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391(b), respectively. The Court has considered the parties submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**[1]

On May 12, 2023, Defendant filed their summary judgment motion. ("Def.'s Br.") (ECF No. 34). On May 29, 2023, Plaintiff filed a cross motion for summary judgment. ("Pl.'s Br.") (ECF No. 37). On June 20, 2023, Defendant filed their reply. ("Def.'s Rep. Br.") (ECF No. 38). On March 11, 2024, the Court, pursuant to Federal Rule of Civil Procedure 56(e)(1), (4), administratively terminated both motions due to Plaintiff and Defendant's failure to submit a

---

[1] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

1

separate statement of undisputed material facts in support of the motion for summary judgment. (ECF No. 40). On that same date, Defendant filed their statement of undisputed material facts. (ECF No. 41). On March 24, 2024, Plaintiff filed his response to Defendant's undisputed material facts. (ECF No. 46). This matter is now ripe for consideration.

Plaintiff Michele Verteramo ("Plaintiff") worked as a Level 5 Mail Handler Equipment Operator ("MEO") at the USPS Northern New Jersey Metro Processing and Distribution Center ("NNJ") in Teterboro, New Jersey. (Defendant's Rule 56.1 Statement of Material Facts Not in Dispute (ECF No. 41) ("DSOF") ¶ 1; Plaintiff's Response to Defendant's Rule 56.1(a) Statement of Material Facts Not in Dispute (ECF No. 46) ("PRSOF") ¶ 3). Plaintiff is a male who identifies as Caucasian. (DSOF ¶ 4; PRSOF ¶ 2).

On June 4, 2020, George Smith, Manager of Distribution Operations ("Smith") called Plaintiff over to the small parcels and bundles machine ("SPBS") number 1 and appeared excited. (DSOF ¶ 7; PRSOF ¶ 7). Smith instructed Plaintiff that he had mail for him to move. (DSOF ¶ 8; PRSOF ¶ 8). Smith pushed approximately seven gaylords[2] into an aisle and instructed Plaintiff to transport the gaylords to the SPBS number three. (DSOF ¶ 9; PRSOF ¶ 9). As Plaintiff went towards SPBS number three, he encountered Supervisor of Distribution Operations ("SDO") Thomas ("Thomas") and asked him why the mail was being transferred to another machine. (*See* Declaration of Brooks E. Doyne, ("Doyne Decl.") Exhibit C, ECF No. 34-3, Deposition Transcript of Plaintiff, at 77:15-17). Thomas explained to Plaintiff that the mail was being moved because different "tours" were switching SPBS machines. (Doyne Decl., Ex. C, ECF No. 34-3 at 77:20-25; 78:1-4). Of the seven gaylords Smith pushed into the aisle, Plaintiff, while driving a forklift, "took three of them" and did "three trips back and forth." (*Id.* at 79:9-11). On one of the trips

---

[2] "Gaylords" are large cardboard boxes that are filled with mail and transported throughout the NNJ. (Def.'s Br. at 2).

between SPBS one and three, Plaintiff saw MEO Milly Kennedy (" MEO Kennedy") "staging her mail" and conversing with Kevin Robinson ("Robinson"), who worked in the bullpen and had concluded his shift. (*Id.* at 79:12-15; 80:1-11). Plaintiff relayed what Thomas' explanation to MEO Kennedy so that she would not stage mail in the wrong place. (*Id.* at 80:20-25; 81:1-5). According to Plaintiff, MEO Kennedy asked him how he was aware of the SPBS machine change. (*Id.* at 81:21-22). Plaintiff wanted to take the two remaining gaylords first so that they would not block the aisle where the emergency exists were located. (*Id.* at 83:6-14). Subsequently, MDO Smith yelled at Plaintiff for not following instructions and "running his mouth." (*Id.* at 85:12-16; DSOF ¶ 13; PRSOF ¶ 13). At that point, Plaintiff was not conversing with MEO Kennedy. (*Id.* at 85:16-19). In response, Plaintiff asked Smith why he was only providing discipline to Plaintiff and then stated, "please, Mr. Smith, just show me what gaylord you want me to move and I'll move it." (*Id.* at 86:13-16; 87:13-16; DSOF ¶ 15; PRSOF ¶ 15) Smith pointed to a gaylord located in front of him rather than the gaylords near the emergency exists and instructed Plaintiff to move it. (*Id.* at 87:15-20; DSOF ¶ 16; PRSOF ¶ 16). While moving the gaylord with the forklift, Plaintiff was talking out loud and stated, "I can't believe they talk to me this way. . .I'm the best driver they have. . .I come early, I stay late." (*Id.* at 88:3-5). Plaintiff told Smith he was only "telling [MEO Kennedy] what we had to do." (*Id.* at 90:9-10). Smith responded that he did not see "[MEO] Kennedy and she's allowed to talk to [Robinson.]" (*Id.* at 91:1-2). Plaintiff retorted he "shouldn't have to do management's job around here" (*Id.* at 91:14-16). In response, Smith said to Plaintiff, "[n]o, Mike, you're running your mouth, you're not following my instructions, you're running your mouth…I'm taking you off the clock, go home." (DSOF ¶ 21; PRSOF ¶ 21). Thereafter, Plaintiff yelled, "[y]ou got to be f[]in[g] kidding me…there's no way you're gonna send me home…you better call the Postal Police and have them come and escort me out of here." (DSOF

3

¶ 22; PRSOF ¶ 22). Smith responded to Plaintiff by telling him that he was not joking, that he was serious, and that he was taking Plaintiff off the clock and instructing him to go home. (DSOF ¶ 23; PRSOF ¶ 23). Plaintiff in turn grabbed all his belongings off his machine, including a USPS scanner, and walked away from Smith towards the direction of the exit. (DSOF ¶ 24; PRSOF ¶ 24). Plaintiff threw the scanner on the floor. (Doyne Decl., Ex. C, ECF No. 34-3 at 95:12). Plaintiff turned around and said, "f[ ]k you, f[ ]k you to Smith. (*Id.* at 95:13-16). Smith responded, "what now you're breaking things." (*Id.* at 95:24:25). Plaintiff ignored this comment and left. (*Id.* at 95:25; 96:1).

On June 4, 2020, Enrique Galan, a Supervisor of Distribution Operations at NNJ issued Plaintiff an Emergency Placement Notice as a result of his refusal to follow directions, his use of profanity, and throwing a scanner near MDO Smith during the altercation earlier that day. (Doyne Decl., Exhibit F, ECF No. 34-9, "Emergency Placement Notice"). The Emergency Placement Notice also charged Plaintiff with assault given his use of profanity towards Smith and throwing an SV scanner against the floor causing it to break.[3] *Id.* The Emergency Placement Notice cites USPS's Zero Tolerance Policy which states, "threats or assaults made directly or indirectly towards any employee or postal customer, even in jest, will not be tolerated." *Id.*

One June 5, 2020, Inspector Walley Wang issued an assault and threat specialty report concerning the June 4, 2020 altercation. (Doyne Decl., Exhibit G, ECF No. 34-10, Report; (DSOF ¶ 31; PRSOF ¶ 31). The assault and threat specialty report notes that USPS inspectors contacted Plaintiff by telephone to interview him about the June 4, 2020 incident. (DSOF ¶ 33; PRSOF ¶ 33). During the interview, Plaintiff indicated that he attempted to contact Smith to apologize for his behavior. (DSOF ¶ 34; PRSOF ¶ 34).

---

[3] Plaintiff disputes that the scanner broke. (*See* PRSOF ¶ 29).

4

On June 10, 2020, SDO Galan conducted a pre-disciplinary interview ("PDI") with Plaintiff in the presence of Shop Steward Mark Chandler and SDO Jacob Varghese. (Doyne Decl., Exhibit H, ECF No. 34-11, Pre-Disciplinary Interview).

One June 17, 2020, SDO Galan issued Plaintiff a notice of removal for failure to follow official instructions and unacceptable behavior during the June 4, 2020 altercation. (DSOF ¶ 48; PRSOF ¶ 48; Doyne Decl., Exhibit I, ECF No. 34-12, Notice of Removal).

On August 11, 2020, Plaintiff filed an EEO Complaint. (PRSOF ¶ 49). On November 13, 2020, USPS Equal Employment Opportunity Complaints Investigator Courtney L. Durham, submitted an investigative report to the USPS EEO. (*Id.*; (Doyne Decl., Exhibit J, ECF No. 34-13, Investigative Report).

On November 29, 2021, Judge Ortiz issued a decision and order dismissing Plaintiff's complaint. (DSOF ¶ 50; PRSOF ¶ 50; Doyne Decl., Exhibit K, ECF No. 34-14, EEOC Decision and Order Dismissing Complaint).

On December 22, 2021, EEOC Services Analyst Stephanie D. Johnson implemented the decision of Judge Ortiz and issued a notice of final action, which advised Plaintiff of his right to file a civil action. (DSOF ¶ 51; PRSOF ¶ 51; Doyne Decl., Exhibit L, ECF No. 34-15, Notice of Final Action).

On February 23, 2022, Plaintiff filed his Complaint. (ECF No. 1).

## II. LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under

5

governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). There can be "no genuine [dispute] as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J.1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). That one cross-motion is denied does not imply that the other must be granted. For each motion, "the court construes facts

and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

## III. DISCUSSION

### A. *McDonnell Douglas* Framework

The *McDonnell Douglas* burden shifting analysis applies to Plaintiff's discrimination claim under Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003). The *McDonnell Douglas* framework first requires that a plaintiff bringing a Title VII claim establish a *prima facie* case of discrimination. 411 U.S. at 802. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does advance a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reason is pretextual, and the real reason for the adverse action is discrimination. *See McDonnell Douglas*, 411 U.S. at 804; *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999); *Boykins v. SEPTA*, 722 F. App'x 148, 152 (3d Cir. 2018).

#### i. *Prima Facie* Case of Discrimination

To establish a *prima facie* case of discrimination, the plaintiff is required to show: (1) he is a member of a protected class; (2) he was qualified for the job that he held; (3) he was terminated; and (4) that his replacement is of a different race than the plaintiff or there is some other basis

7

(such as comparator or statistical evidence) for inferring discriminatory intent. *See McDonnell Douglas*, 411 U.S. at 800–02. *See also Jones*, 198 F.3d at 410–11 (3d Cir. 1999).[4]

Here, Plaintiff is a non-minority essentially asserting "reverse race discrimination." The United States Court of Appeals for the Third Circuit directs courts to employ a modified *McDonnell Douglas* analysis framework in cases of "reverse discrimination." *See Ledda v. St. John Neumann Regional Academy*, No. 20-700, 2021 WL 1035106 at *5 (M.D. Pa. 2021) (citing *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir. 1999)). Under this framework, at the motion for summary judgment stage, "all that should be required to establish a *prima facie* case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco*, 190 F.3d at 161.

"For cases involving 'reverse race discrimination,'" the *prima facie* test that a plaintiff must demonstrate is as follows: (1) the plaintiff is qualified for his position; (2) the plaintiff suffered an adverse employment action; and (3) the adverse employment action gave rise to an inference of discrimination." *Phillips*, 624 F.Supp.3d 539-40 (citing *Ellis v. Bank of New York Mellon Corp*, 837 F. App'x 940, 941 (3d Cir. 2021)).

The Court will use this modified *prima facie* test in evaluating Plaintiff's claims of discrimination. In this case, USPS does not dispute the second prong—that Plaintiff suffered an adverse employment action when he was terminated. (*See* Def.'s Br. at 10); *see also Dzibela v. BlackRock Inc.*, No. 23-02093, 2024 WL 4349813, at *6 (D.N.J. September 30, 2024) ("[C]ourts have long held that termination qualifies as an adverse employment action") (citing *McDonnell Douglas*, 411 U.S. at 802). The *prima facie* elements in dispute are the first and third, whether

---

[4] "The elements of a *prima facie* case are the same for discrimination claims on the basis of sex and race." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 843–44 (3d Cir. 2016) (citation omitted).

8

plaintiff is qualified for his position[5] and whether the adverse action gave rise to an inference of discrimination.

Reviewing the evidence and drawing all justifiable inferences in a light most favorable to Plaintiff as the Court is required to do at summary judgment, *see Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255), the Court finds Plaintiff has shown that he was qualified for his position; Plaintiff passed the necessary test with a sufficient score and all other necessary predicates of employment. (Doyne Decl., Ex. C, ECF No. 34-3 at 38:1-21).

The Court turns to the third element, inference of discrimination.

A plaintiff can show circumstances giving rise to an inference of unlawful discrimination by either (1) introducing "evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances)"; or (2) relying on "circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *See Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014); *see also Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 540 (D.N.J. 2022) ("A plaintiff may show circumstances giving rise to an inference of discrimination with any kind of relevant evidence, including 'comparator evidence, evidence of similar racial discrimination against other employees, or direct evidence of discrimination from statements or actions by [the plaintiff's] supervisors suggesting racial animus") (quoting *McFadden v. Whole Foods Mkt. Grp., Inc.*, No. 19-1103, 2021 WL

---

[5] USPS recites this second element under the traditional four prong *McDonnell Douglas* framework as whether "his job performance was satisfactory" (Def.'s Br. at 9-10), however, the Court notes that all the cases USPS cites utilize language consistent with the Court's—determining whether plaintiff is qualified for his position. (*See* Def.'s Br. at 10 (citing *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *Jackson v. Temple University Hospital, Inc.*, 501 F. App'x 120, 122 (3d Cir. 2012)).

9

736899, at *7 (E.D. Pa. Feb. 25, 2021) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)). Comparator evidence is "evidence that defendant treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff." *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006)). "[T]o be considered similarly situated, comparator employees must be similarly situated in all relevant aspects." *Ewell v. NBA Props.*, 94 F. Supp. 3d 612, 624 (D.N.J. 2015) (citing *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881–82 (3d Cir. 2011)).

Here, Plaintiff contends he is similarly situated to MEO Kennedy because she is an MEO, is also a level five mail handler and has the same job responsibilities. (Doyne Decl., Ex. C, ECF No. 34-3 at 100:2-20). However, MEO Kennedy is not a similarly situated comparator because as Plaintiff acknowledges, she had a different supervisor. (*Id.* at 109:21-22).[6] Plaintiff's argument as it relates to MEO Kennedy omits a basis for Smith to have only "singled out" Plaintiff as opposed to MEO Kennedy; Plaintiff decided to move two gaylords in the emergency exit aisle rather than the ones identified by Smith. (*Id.* at 83:6-14; 87:15-20). Plaintiff has also failed to identify an employee who engaged in similar conduct but retained their job.

Consequently, Plaintiff has not provided admissible evidence to prove that the circumstances surrounding his suspension give rise to an inference of discrimination, this Court is left with only Plaintiff's bare assertions, subjective beliefs, and conclusory allegations of discrimination. Such contentions, without more, are not sufficient to establish an inference of

---

[6] At a subsequent point in his deposition, Plaintiff testified that MEO Kennedy technically had the same supervisor as him, MDO Smith because he is superior to SDO Galan, and therefore, "everyone's supervisor" (Doyne Decl., Ex. C, ECF No. 34-3 at 110:14-23). Assuming this to be true, even if MEO Kennedy was deemed similarly situated, and Plaintiff established a *prima facie* case of disparate treatment based on race, Plaintiff has failed to rebut Defendant's proffered non-discriminatory reason for his termination. Moreover, even if MEO Kennedy was similarly situated, Plaintiff fails to identify a comparator who engaged in similar conduct but were *not* placed on emergency placement/nonpaid status and/or retained their position.

discrimination. *See Tourtellotte*, 636 F. App'x at 843–44 ("[Plaintiff] has not presented specific facts or identified evidence, beyond her own bare assertions, that would support her disparate treatment theory of discrimination."); *Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135 (3d Cir. 2014) (explaining that "subjective belief that [protected classification] played a role in these employment decisions, however, is not sufficient to establish an inference of discrimination."). Plaintiff presents no evidence from which an inference of discrimination can be drawn, or that establishes a casual nexus between his termination and race or sex. *Greene*, 557 F. App'x at 196 ("[Plaintiff] otherwise failed to produce evidence that could give rise to an inference of discrimination because the evidence that he produced could not establish a causal nexus between the termination of his employment and his membership in the protected class."). Thus, he has failed to establish a *prima facie* showing of disparate treatment on the basis of his race.

      **ii.**    **Legitimate, Non-Discriminatory Reason for Adverse Employment Decision**

At the second stage of the *McDonnell Douglas* framework, an employer defendant meets its burden by producing evidence "which, if taken as true, would allow a reasonable jury to conclude that there was a legitimate, non-discriminatory reason for the adverse employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citation omitted); *Sarullo*, 352 F.3d at 797. Courts have explained that this is a "relatively light" burden. *Terrell v. Main Line Health, Inc.*, 320 F.Supp.3d 644, 657 (E.D. Pa. 2018) (quoting *Fuentes*, 32 F.3d at 763). Significantly, at this step, "the employer need not prove that the proffered reason actually motivated the termination decision. . . ." *Id.* Instead, "throughout this burden-shifting paradigm[,] the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763.

Here, USPS has met its burden by offering a legitimate, non-discriminatory reason for Plaintiff's termination: he refused to comply with this supervisor's instruction to leave the

11

premises, told his supervisor "f[ ]k you," and threw a scanner on the floor; these actions were contrary to the USPS's Zero Tolerance Policy. Thus, these reasons suffice as a legitimate, non-discriminatory reason for Plaintiff's termination.

### iii. Pretext

The third step of the *McDonnell Douglas* framework requires Plaintiff to prove by a preponderance of evidence that Defendant's legitimate, non-discriminatory reason was "not its true reason[ ], but w[as] a pretext for discrimination." *Jones*, 198 F.3d at 410; *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017). "In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Phillips*, 624 F.Supp.3d at 544 (internal citation omitted). To show pretext, plaintiff must proffer evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.

Even if Plaintiff had established a *prima facie* case of disparate treatment on the basis of race, he has failed to rebut Defendant's proffered non-discriminatory reasons for his termination. When Plaintiff was asked if he had any evidence or documents that would establish race discrimination, Plaintiff responded:

> Well, I mean, I see from day-to-day the way he treats other employees versus the way he treats me, but I don't have anything as far as proving discrimination. It's so hard to prove discrimination because – I mean, maybe he just likes [Kennedy] and he hates me, you know. I don't know why he's treating me differently.

(Doyne Decl., Ex. C, ECF No. 34-3 at 34:6-8).

When Plaintiff was asked why he believes he experienced discrimination based on his gender, Plaintiff responded:

> So for example, when I had the incident with Milly Kennedy, when I had the incident with Naboo, these are both African American female, you know, black employees and they're treated one way and then I'm treated a different way, you know, and so, I mean, it's possible that, it's possible that Mr. Smith did not discriminate against me based on race or sex or color, you know, but I don't know what the reason is for him to treat me differently.

(Doyne Decl., Ex. C, ECF No. 34-3 at 69:1-15).

Besides failing to provide evidence to rebut Defendant's non-discriminatory reason for terminating him, Plaintiff has not presented evidence of past unlawful discrimination by Defendant, and therefore, has not established pretext. *See Jordan v. Allgroup Wheaton*, 218 F. Supp. 2d 643, 651 (D.N.J. 2002), *aff'd*, 95 F. App'x 462 (3d Cir. 2004) ("Pretext cannot be established based on speculation and mere conclusory allegations"). "Further, Plaintiff cannot prove past unlawful discrimination or pretext where, as here, "[h]e only points to his self-serving. . .testimony and subjective beliefs and speculations that Defendant[ ] engaged in. . .discrimination." *Jackson v. New Jersey Juv. Just. Comm'n*, No. 19-17950, 2023 WL 22497, at *10 (D.N.J. Jan. 3, 2023) (quoting *Sutton v. Bd. of Educ. of Plainfield*, No. 13-5321, 2015 WL 9308251, at *8 (D.N.J. Dec. 22, 2015); *see also Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("[C]onclusory, self-serving affidavits [and testimony] are insufficient to withstand a motion for summary judgment .... In this case, [Plaintiff's] own, sworn statements are insufficient to survive summary judgment.").

Accordingly, Plaintiff has failed to establish a genuine issue of material fact, which entitles Defendant to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, USPS's motion for summary judgment (ECF No. 34) is **GRANTED** and Plaintiff's cross-motion for summary judgment (ECF No. 37) is **DENIED as moot.** An appropriate Order accompanies this Opinion.

**DATED:** December 12, 2024

_____
JULIEN XAVIER NEALS
United States District Judge